UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN TRAPP #770672,

        Plaintiff,

v.

R. WHITE,

        Defendant.
_____/

Case No. 2:23-cv-00005

Hon. Paul L. Maloney
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant's motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 20.) Plaintiff has not filed a response.

State Prisoner Steven Trapp filed a verified complaint pursuant to 42 U.S.C. § 1983 alleging that Defendant Corrections Officer (CO) White retaliated against him, in violation of his First Amendment rights, by issuing him a misconduct ticket. (ECF No. 1.) Trapp says that he was employed as a kitchen porter while confined at the Marquette Branch Prison. (*Id.*, PageID.2.)

Trapp says that between late May and early July of 2022, he was scheduled to work 4-5 days per week, but he worked 2-3 times per day, every day. (*Id.*) During the early morning hours of July 6, 2022, CO White told Trapp to report to work. (*Id.*, PageID.3.) Trapp says that he was not scheduled to work and that he was not volunteering to work that day. (*Id.*) Trapp states that CO White told him that: "I'm

not asking another porter to work, and unless your arms are broken, then you better get out here and work." (*Id*.)  Trapp says that after he threatened to file a grievance, CO White issued him a Class I misconduct report charging him with incite to riot or strike.  (*Id*.)  The misconduct report states that Trapp and six other prisoner food service workers refused to work that day, causing a delay in the distribution of breakfast food trays and a delay in prisoners getting out to the prison yard.  (ECF No. 21-2, PageID.75.)

At the hearing on the Class I misconduct report, the Administrative Law Judge changed the charge to disobeying a direct order and found Trapp guilty.  (*Id*., PageID.74.)  Trapp appealed that decision.  (*Id*., PageID.73.)  On rehearing, it was determined that the ALJ was not authorized to change the charge in the misconduct report and that "[t]he decision of the hearing officer is not supported by competent, material, and substantial evidence in the whole record."  (*Id*., PageID.72.)

Trapp alleges that he exhausted his administrative remedies by filing a Step I grievance for retaliation against CO White. (ECF No. 1, PageID.4.)  White says that when he failed to receive any response, he submitted a handwritten Step II grievance.  (*Id*.)  That grievance was never processed so he submitted a handwritten Step III grievance.  (*Id*.)  Trapp alleges that the MDOC never processed these grievances and that he never received any responses.  (*Id*.)

Defendant White argues that Trapp failed to exhaust his administrative remedies because White never asserted a retaliation claim during the misconduct hearing or in his appeal of the misconduct decision.  Moreover, the MDOC never

2

waived the requirement that Trapp raise his retaliation issue during the misconduct hearing because it never considered his grievances.

Based on the record before the Court, the undersigned concludes that Trapp failed to properly exhaust his administrative remedies before he filed this lawsuit. Accordingly, the undersigned respectfully recommends that this Court grant CO White's motion for summary judgment and dismiss this case without prejudice due to Trapp's failure to exhaust his administrative remedies.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

4

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy

Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[2] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### IV. Analysis

White argues that Trapp failed to raise his retaliation claim during the hearing on his misconduct ticket and in the appeal of the misconduct conviction. The Class I misconduct hearing report does not reflect that that White raised retaliation during the hearing. The hearing report is shown below.

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

10

**CLASS I MISCONDUCT HEARING REPORT**  Rev. 10/10

| Prisoner | Prisoner Name | Facility Code | Lock | Violation Date |
|---|---|---|---|---|
| 770672 | Trapp | MBP | D-16 | 07/06/2022 |

**Charge(s)**
Incite to Riot or Strike; Rioting or Striking

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| Disobeying a Direct Order | ☐ Guilty   ☒ Not Guilty |

Misconduct Report Read to and Discussed with Prisoner ☒ (check if applies)
Hearing Investigation Read to and Discussed with Prisoner ☒ (check if applies)
No Hearing Investigation Requested ☐ (check if applies)

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

This misconduct hearing held via Tele-video conferencing within the time limits set by MDOC PD 03.03.105(BB).
Prisoner's oral statement at hearing: not guilty. This was my day off and I had worked the prior day voluntarily.
The 9 page record was read and reviewed with prisoner which included: Each document is one page unless indicated. Critical incident (2) not held confidential. H.I. statement and that of the prisoner. Meal servers. Itinerary (2). The misconduct sanction screening form.
   The prisoner had nothing to add.
   The prisoner was told findings would be made after interviewing all those charged. The report was then typed outside the prisoner's presence.

**REASONS FOR FINDINGS**

 Disobeying a Direct Order (420) MDOC PD 03.03.105. Refusal or failure to follow a valid and reasonable order of an employee. The prisoner is guilty of this reduced charge. The elements to support the original charge are not met. Per the prisoner and uncontested by the facility only three of the 7 named prisoners were actually told to report to their assignment to work food service. The rest were not. This prisoner worked distributing meals in the unit. He could have done that this date. He claimed it was his off day (which it was). However, the prisoner was subject to call in at any time and was on the schedule to work this date. The prisoner could have worked and did not. The order to get up and report to the assignment was reasonable and valid. The prisoner did not.
  The prisoner was not involved in a riot. He had not advocated or engaged in concerted group action to endanger the physical safety of the facility, person or property or to disrupt the operation of the facility by group cessation or normal activity or even a work stoppage. While staff then decided to feed the rest of the unit themselves they did not in fact call out half the potential work crew. Also staff have fed the units at times when the unit is locked down. While the prisoners' actions might have approached creating a disturbance, that would have required more evidence linking the 3 prisoner's actions.

(ECF No.21-2, PageID.74.)

Furthermore, Trapp's appeal form establishes that he did not raise retaliation as a reason for appeal. Trapp's request for rehearing states:

> | PRISONER'S NUMBER | PRISONER'S NAME | INSTITUTION |
> | 770672 | Steven Trapp | MBP |
> | DATE OF MISCONDUCT | TYPE OF HEARING (IF MISCONDUCT, LIST CHARGES ALSO) "Incite to Riot or strike! Rioting or striking / charge to "Disobeying a Direct Order" |
> | 7-6-22 | |
> | DATE OF HEARING | |
> | 7-13-22 | |
>
> Briefly explain why you believe a rehearing should be ordered: On 7/6/2022 I was writen a class 1 misconduct incite to rite or strike. this misconduct was writen by C/O Mr. R. White. This misconduct was later dismissed, and dropped down to a (420 Disobeying a direct order). In the body of the ticket along with (Attach work scheduled documents) you will clearly be able to conclude that (1) I wasn't scheduled to work that day the 4 other prisoners who was scheduled to work refused. I shouldn't of been found guilty of this misconduct as well. I also would like for it to be duly noted that at no time did C/O White give me a direct order to come out to work which the body of the ticket will support. In this case I was threw in the hole/segregation and strip from my job detail for nothing. I feel the hearing officer seasons for finding me guilty on a disobeying a direct order was wrong, and the attached work schedule showing that I was off and not scheduled to work that day will support my claim. I humbly ask that all the facts is looked at and this disobeying direct order be dismissed and I'am re-signed to my work detail, and paid for the days that I've bee layed off. Thank you for your time concerning this matter.

(*Id.*, PageID.73.) Therefore, Trapp failed to comply with *Siggers*, 652 F.3d at 693-94, which interprets MDOC policy as requiring prisoners to raise the issue of retaliation during the misconduct hearing process.

Trapp, however, asserted in his complaint that he exhausted his retaliation claims against CO White because he submitted grievances through Step III of the grievance process. (ECF No. 1, PageID.4.) Filing a grievance on a false misconduct retaliation claim fails to comply with MDOC policy and cannot exhaust administrative remedies unless the MDOC waives the procedural requirements and considers the merits of the grievances. *Reed-Bey*, 603 F.3d at 325. Trapp, however, admits that those grievances were never processed. Trapp alleges:

12

> V. Exhaustion of Remedies
>
> 22. The Plaintiff filed a step I grievance against C/O White on July 6, 2022 for taking adverse action against him when White filed the false, retaliatory 'Incite To Riot' misconduct after Plaintiff warned that he will be filing a grievance against him.
>
> 23. The Plaintiff never received any response from the Grievance Coordinator nor the Administration for the step I grievance, and on or about July 16, 2022 the Plaintiff began to request a step II form from the Grievance Coordinator which was never provided.
>
> 24. The Plaintiff then submitted a handwritten step II grievance concerning the same issues on or about July 20, 2022, and it as well was not processed by the Administration.
>
> 25. The Plaintiff then filed a handwritten step III grievance on or about August 1, 2022 to the Hearings Administrator's office in Lansing concerning the same retaliatory issues exercised by C/O White, and, that too was never process by the MDOC Administration.
>
> 26. Therefore, due to Administrative interference during the grievance stage, the Plaintiff's administrative remedies were not made available to him by the MDOC and thus made it impossible to exhaust.

(ECF No. 1, PageID.4.) As a result, the MDOC could not have waived the procedural requirements set forth in *Siggers*. As admitted by Trapp, the MDOC never considered the grievances. Thus, the grievances that Trapp says he submitted could not have exhausted his administrative remedies on his claim that CO White retaliated against him by issuing the misconduct report.

### V. Recommendation

Accordingly, the undersigned respectfully recommends that this Court grant Defendant CO White's motion for summary judgment and dismiss this case without prejudice due to Trapp's failure to exhaust his administrative remedies.

Dated: August 5, 2024                                /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U. S. MAGISTRATE JUDGE

13

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).